1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRITTNEY TURNER,

                              Petitioner,

        v.

ISRAEL JACQUEZ,

                              Respondent.

CASE NO. 2:19-cv-00545-JCC-BAT

**REPORT AND
RECOMMENDATION**

Petitioner Brittney Turner is currently serving her sentence at the SeaTac Federal Detention Center, with a projected release dated of June 12, 2019.  Dkt. 3, p. 3; Dkt. 42. Ms. Turner requests the Court to issue an order: (1) directing the Bureau of Prisons ("BOP") to recalculate her good time credits under the First Step Act of 2018, which amended 18 U.S.C. § 3624(b) and permits federal inmates to earn up to 54 days of good time credit for each year of the sentence imposed, and (2) declaring that this new calculation governs her release date. *See* Dkt. 3, p. 5. If the requested relief is granted, Ms. Turner contends she would be entitled to an additional 24 days of good time credit and should have been released on May 19, 2019. *Id.*, p. 3.

The government contends Ms. Turner's petition is premature and unripe as the provision of the First Step Act under which Ms. Turner seeks relief has not yet taken effect and will not take effect until "the date that the Attorney General completes and releases the risk and needs

REPORT AND RECOMMENDATION - 1

1   assessment system." Dkt. 6, pp. 3-4. Other district courts that have considered petitions alleging

2   claims similar to Ms. Turner's, have denied relief because the amendment has not yet taken

3   effect. *See* Dkt. 6, pp. 4-5 (and cases cited therein). The government also contends relief is not

4   appropriate as Ms. Turner failed to exhaust her administrative remedies. *Id*., p. 6.

5         Ms. Turner's contention that the 54 days of good time credit an inmate may earn under

6   the First Step Act is unrelated to the completion of the risk and needs assessment system, has

7   merit.  However, the Court is not in a position to provide the relief Ms. Turner requests where

8   the language of the First Step Act delays implementation of the 54 days of good time credit, and

9   where there is nothing establishing Congress intended to grant inmates 54 days of good time

10   upon the First Step Act's effective date of December 21, 2018. The undersigned thus

11   recommends dismissal of Ms. Turner's petition because the provision of the First Step Act under

12   which she seeks relief has not yet taken effect, but does not recommend dismissal on the grounds

13   that her petition was brought prematurely or for failure to exhaust.

14                 **BACKGROUND**

15   **A.**    **Ms. Turner's Term of Imprisonment**

16         Brittany Turner was arrested in 2016 following the return of a Superseding Indictment in

17   the Southern District of California charging her and others with conspiracy to distribute

18   methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See United States v. Turner*,

19   3:15-cr-00387-JM, Southern District of California, Dkt. 42. Ms. Turner pleaded guilty to this

20   charge on June 27, 2017. *Id*. at Dkt. 195, 197. For this offense, she received a forty-two month

21   prison sentence followed by three years of supervised release. *Id*. at Dkt. 343. She is currently

22   serving this sentence at the Sea-Tac Federal Detention Center and has a projected release date of

23   June 12, 2019.

REPORT AND RECOMMENDATION - 2

On April 11, 2019, Ms. Turner filed her habeas petition, alleging that she is being unlawfully deprived of good time credits because the BOP has not recalculated the application of such credits to her sentence in accordance with the First Step Act. Dkt. 3.

Ms. Turner's habeas petition is one of a growing number of § 2241 habeas petitions recently filed by federal prisoners seeking release prior to July 19, 2019.[1] In *Johnston v. Jacquez,* C19-550 JLR-BAT (alleging release date of April 29, 2019), the Court requested submission of additional briefing and specifically requested the parties to address: (1) why the Court cannot grant the relief requested when the original congressional intent of 18 U.S.C. § 3624(b) was to grant a prisoner serving a sentence of more than one year, good time credits of 54 days per year; (2) whether petitioner is excused from exhausting his administrative remedies; (3) whether the "risk and needs assessment" of Section 101(a) of the First Step Act is relevant to the BOP's calculation of good time credits; and (4) whether the Court may make factual findings to determine if petitioner "has displayed exemplary compliance with institutional disciplinary regulations" under 18 U.S.C. § 3624(b)(1). Dkt. 5, p. 2 in Case No. C19-550. In addition to considering the parties' briefs in that case (Dkts. 6, 7), the Court heard oral argument on May 20, 2019 (Dkt. 9), and considered the Statement of Supplemental Authorities (Dkt. 11) filed by the Federal Public Defender.

The Court takes judicial notice of the arguments and materials submitted by the United States Attorney and Federal Public Defender's Offices regarding application of the First Step Act

---

[1] *See e.g.*, *Corbett v. Jacquez*, C19-531 MJP-BAT (alleging release date of July 7, 2019); *Acedo v. Jacquez*, C19-529 RSM-MLP (alleging release date of July 7, 2019); *Ephrem v. Jacquez*, C19-534 RAJ-BAT (alleging release date of September 30, 2019); *Garcia-Orante v. Jacquez*, C19-536 RAJ-MLP (alleging release date of June 2, 2019); *Rigney v. Jacquez*, C19-548 RSL-MLP (alleging release date of May 30, 2019); and *Soundingsides v. Jacquez*, C19-544 JCC-MLP (alleging release date of June 20, 2019); *Johnston v. Jacquez*, C19-550 JLR-BAT (alleging release date of April 29, 2019).

1  in the *Johnston* case. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal

2  citation omitted) (judicial notice is appropriate for "undisputed matters of public record,

3  including documents on file in federal or state courts."); *see also Bennett v. Medtronic, Inc.*, 285

4  F.3d 801, 803 n.2 (9th Cir. 2002) (courts "may take notice of proceedings in other courts, both

5  within and without the federal judicial system, if those proceedings have a direct relation to

6  matters at issue.")

7  **B.    History and Enactment of the First Step Act**

8         Under federal statutes, a term of imprisonment is satisfied through actual time in custody

9  plus good time credits. 18 U.S.C. § 3624(a) and (b). The Sentencing Reform Act of 1984

10  eliminated the parole system and sharply cut back on the rate at which federal prisoners could

11  earn good time credit, providing in § 3624(b) that prisoners could receive "credit toward the

12  service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each

13  year of the prisoner's term of imprisonment." The BOP calculated the good conduct earned

14  based on actual time served in prison, not the length of the imposed prison sentence. *Barber v.*

15  *Thomas*, 560 U.S. 474, 476-79 (2010). This resulted in prisoners effectively earning 47 days per

16  year of good conduct credit instead of a full 54 days, because a prisoner is unable to earn a full

17  year's worth of good credit in his final year of incarceration assuming it is a partial year of

18  confinement. *Id.* The Ninth Circuit upheld this computation in *Pacheco-Camacho v. Hood*, 272

19  F.3d 1266, 1268 (9th Cir. 2001), and the Supreme Court approved the 47-day formula using time

20  of actual custody. *Barber*, 560 U.S. at 492.

21         Shortly after *Barber*, the Department of Justice and the BOP supported legislation that

22  would shift the 54-day calculation from actual time served to the sentence imposed, thereby

23  increasing the maximum available good time credits from 47 to 54 days per year. *See* Hearing on

REPORT AND RECOMMENDATION - 4

1   the Oversight of the Federal Bureau of Prisons Before the Subcomm. on Crime, Terrorism,

2   Homeland Security and Investigations of the H. Comm. on the Judiciary, 113th Cong., at 23-24

3   (2013) (Statement of Charles E. Samuels, Jr. Director, Federal Bureau of Prisons).[2] The

4   provision was included in the First Step Act, which was signed into law on December 21, 2018.

5        Title I of the First Step Act, entitled "Recidivism Reduction," consists of seven sections.

6   The bulk of the title is set out in Section 101, which contains two subsections, each amending a

7   separate statute.

8        **Subsection 102(a)** amends 18 U.S.C. § 3621 to provide for implementation of a risk and

9   needs assessment system (referred to as the "System" within the statute) to be developed in

10   accordance with Section 101. The risk and needs assessment system shall (1) determine the

11   recidivism risk level (minimum, low, medium, or high) of each prisoner at intake; (2) assess and

12   determine the risk of violent or serious misconduct of each prisoner; (3) determine the type and

13   amount of programming for each prisoner and assign programming accordingly; (4) reassess

14   each prisoner periodically and adjust programming assignments accordingly; (5) reassign

15   prisoners to appropriate programs based on revised determinations; (6) determine when to

16   provide incentives and rewards for successful participation in programming or productive

17   activities; and (7) determine when a prisoner is ready to transfer into prerelease custody or

18   supervised release. Pub. L. 115-391, § 101, 132 Stat. 5194, 5195-5208 (2018) (promulgating 18

19   U.S.C. §§ 3631-3635); Staff of S. Comm. on the Judiciary, 115th Cong., S.3649, The First Step

20   Act Section by-Section Summary, at 3 (Nov. 15, 2018).

21

22

23

---

[2] Available at https://www.govinfo.gov/content/pkg/CHRG-113hhrg82847/pdf/CHRG-113hhrg82847.pdf, at 23-24.

1    The Attorney General has 210 days after enactment (December 21, 2018) within which to

2 develop and publicly release the risk and needs assessment system. 132 Stat. at 5196

3 (promulgating 18 U.S.C. § 3632). Within 180 days after that, the Director of the BOP must

4 assess each prisoner and begin to provide appropriate programming. 132 Stat. at 5208

5 (promulgating 18 U.S.C. § 3621(h)). There is a two-year "phase-in" for the BOP to make

6 programming available to all prisoners. 132 Stat. at 5209.

7    **Subsection 102(b)** makes two amendments to 18 U.S.C. § 3624. As relevant to Ms.

8 Turner's petition, **Subsection 102(b)(1)** amends 18 U.S.C. § 3624(b)(1) to change the method by

9 which the BOP is to calculate good time credits (hereinafter, "the good time fix amendment"):

10    Section 3624 of title 18, United States Code, is amended—

11    (A) in subsection (b)(1)—

12    (i)  by striking '', beyond the time served, of up to 54 days at the end of each year
of the prisoner's term of imprisonment, beginning at the end of the first year of

13    the term,'' and inserting ''of up to 54 days for each year of the prisoner's sentence
imposed by the court,''; and

14

15    (ii)  by striking ''credit for the last year or portion of a year of the term of
imprisonment shall be prorated and credited with in the last six weeks of the
sentence'' and inserting ''credit for the last year of a term of imprisonment shall

16    be credited on the first day of the last year of the term of imprisonment[.]''

17 § 102(b)(1)(A), 132 Stat. at 5210. The Senate's Section-by-Section Report describes the intent of

18 these amendments:

19    Amends Section 3624 of title 18 of the U.S. Code to clarify congressional intent
behind good time credit, which is earned for "exemplary compliance with

20    institutional disciplinary regulations," to ensure that a prisoner who is serving a
term of imprisonment of more than 1 year may receive good time credit of 54
days per year toward the service of the prisoner's sentence. Also establishes

21    eligibility for prerelease custody or supervised release for risk and needs
assessment system participants. Allows such eligible prisoners to be placed in

22    home confinement or residential reentry centers, subject to the conditions required
by the Act and the BOP Director, or transferred to begin a term of supervised

23    release; a violation of the conditions of prerelease custody may result in

revocation and require the violator to return to prison. Requires the Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, to issue guidelines for BOP to use in determining the appropriate type of prerelease custody or supervised release and level of supervision required, as well as consequences for violations of prerelease custody conditions. Requires the BOP Director to enter into agreements with the United States Probation and Pretrial Services to supervise prisoners placed in home confinement and ensure that there is sufficient prerelease custody capacity to accommodate all eligible prisoners. Additionally, allows prisoners to receive mentoring services from a person that provided those services to the prisoner while incarcerated, absent a significant security risk.

*Clarifies that the amendments in this section related to prerelease custody shall take effect on the date that the Attorney General completes and releases the new risk and needs assessment system,* and apply with respect to offenses committed before, on, or after the date of enactment of the Act, except with respect to offenses committed before November 1, 1987 (which are subject to federal parole).

The First Step Act Section-by-Section Summary, at 3 (emphasis added).

Ms. Turner contends the language italicized above, delays implementation of *only* those provisions of Subsection 102 relating to prerelease custody and which are directly dependent on the new risk and needs assessment system (such as new Subsection 102(g)[3]), but *does not* delay implementation of the good time fix amendment contained in Subsection 102(b)(1). The government contends the plain language of the First Step Act establishes that *all amendments made by Subsection 102*, which includes the good time fix amendment, do not take effect until the Attorney General releases the risk and needs assessment system, which has not yet been completed and is not required to be completed until July 19, 2019.

---

[3] As part of the earned time credit system, Section 102 also adds Subsection (g) to 18 U.S.C. § 3624. § 102(b)(1)(B), 132 Stat. at 5210-13. Under that provision, the BOP can place an "eligible prisoner" who has earned time credits equal to the time remaining on his or her sentence in prerelease custody (home confinement or residential reentry center) or transfer the prisoner to supervised release up to 12 months early.

REPORT AND RECOMMENDATION - 7

Subsection 102(b)(2) contains the effective date language applicable to Subsection 102:

EFFECTIVE DATE − The *amendments made by this subsection* shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of Title 18, United States Code, as added by Section 101(a) of this Act.

See Pub. L. No. 115-015, 132 Stat. 015 § 102(b)(2) (2018) (emphasis added).

Virtually every district court that has considered habeas petitions similar to the one brought here, has interpreted the "effective date" provision of Subsection 102(b)(2) to preclude relief under the good time fix amendment because that amendment has not yet taken effect. *See* Dkt. 6 at 5 (citing *Jeffrey Crittendon v. Warden White*, 19-cv-669, 2019 WL 1896501 (M.D. Pa. April 29, 2019); *United States v. Marc Yates*, 15-40063-01-DDC, 2019 WL 1779773 (D. Kan. Apr. 23, 2019); *Rufino Munoz v. United States*, 19-cv-324-O, 2019 WL 1778682 (N.D. Tex. Apr. 23, 2019); *McCullough v. Bureau of Prisons*, 19-cv-639-RMG, 2019 WL 1767393 (S.D. S.C. Apr. 22, 2019); *United States v. Landry*, No. 3:18-cr-5002-RBL, slip op. at *1 (W.D. Wash. Apr. 18, 2019) (denial of petition and motion for reconsideration based on the statute's plain language in delaying the amendment); *Greene v. Underwood*, No. 4:19-cv-160-Y, 2019 WL 1531673 (N.D. Tex. Apr. 9, 2019); *Matthews v. Williams*, No. 4:19-cv-518, 2019 WL 1639776 (N.D. Ohio Apr. 16, 2019); *United States v. Scouten*, No. 13-cr-20S, 2019 WL 1596881 (W.D.N.Y. Apr. 15, 2019); *United States v. Parrett*, No. 01-cr-168-JPS, 2019 WL 1574815 (E.D. Wis. Apr. 11, 2019); *Roy v. Bureau of Prisons*, No. 2:19-cv-59-RMP, 2019 WL 1441622 (E.D. Wash. Apr. 1, 2019); *Rizzolo v. Puentes*, 2019 WL 1229772 (E.D. Ca. Mar. 15, 2019); *Darren Bottinelli, et al. v. Josias Salazar, et al.*, No. 3:19-cv-256-MO, slip op. at *2-3 (D. Oregon Mar. 13, 2019) (appeal pending, *see Darren Bottinelli, et al. v. Salazar*, C.A. No. 19-35201); *Sheppard v. Quintana*, No. 5:19-cv-084-DCR, 2019 WL 1103391, at *2 (E.D. Ky. Mar. 8, 2019); *Sennett v. Quintana*, No. 5:19-cv-085-JMH, 2019 WL 1085173, at *2 (E.D. Ky. Mar. 7, 2019)).

REPORT AND RECOMMENDATION - 8

1

**DISCUSSION**

2

**A.    Constitutional and Prudential Ripeness**

3        The government contends that, "[b]ecause the amendment is not yet effective, any claim

4   that the Bureau of Prisons has failed to calculate sentence credit according to its terms, is not yet

5   ripe." Dkt. 6 at 3. Ms. Turner contends that, because the good time fix amendment should have

6   taken effect upon the enactment of the First Step Act on December 21, 2018, she should have

7   been released on May 19, 2019, a full two months before July 19, 2019, when the BOP intends to

8   recalculate the good time credits. Thus, this habeas petition raises neither a hypothetical nor an

9   abstract disagreement. Dkt. 7 at 2. Ms. Turner argues further, "[t]his is not a claim about whether

10  the BOP has properly counted days. This is a claim about the effective date of the good-time

11  provision, and whether the BOP should recalculate Ms. Turner's release date pursuant to the

12  good-time fix…." *Id.* Additionally, because Ms. Turner's release date (as has been established by

13  the BOP) is June 12, 2019, waiting until July 19, 2019 (when the government contends the good

14  time fix amendment is effective), would render her petition moot.

15       Federal courts are limited to deciding "cases" and "controversies." U.S. Const. art. III, §

16  2. One component of the "case or controversy" requirement is that a claim must be ripe for

17  review. *Bova v. City of Medford*, 564 F.3d 1093, 1095-96 (9th Cir. 2009). "[R]ipeness addresses

18  when litigation may occur[,]" *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997), and is

19  "designed to 'prevent the courts, through avoidance of premature adjudication, from entangling

20  themselves in abstract disagreements.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d

21  1134, 1138 (9th Cir. 2000) (en banc) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136,

22  148, (1967)). It has two components, "constitutional ripeness and prudential ripeness." *Id.* To

23  determine constitutional ripeness, a court must examine "whether the issues presented are

REPORT AND RECOMMENDATION - 9

1   definite and concrete, not hypothetical or abstract." *Wolfson v. Brammer*, 616 F.3d 1045, 1058

2   (9th Cir. 2010) (internal citations omitted); *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009).

3   To determine prudential ripeness, the Supreme Court has developed a two-part test: "the fitness

4   of the issues for judicial decision" and "the hardship to the parties of withholding court

5   consideration." *Id.* at 1006.

6          As previously mentioned, virtually every district court that has considered petitions

7   alleging the claim as that alleged here by Ms. Turner have denied the petition as meritless

8   because Subsection 102(b)(1) has not yet taken effect. *See*, Dkt. 6 at 5, *supra*; *see also*, *United*

9   *States v. Landry*, No. 3:18-cr-5002-RBL, slip op. at *2 (W.D. Wash. Apr. 18, 2019) ([b]ecause

10  the express language of the statute unequivocally delays its effective date, the issue of whether

11  Landry's sentence is correctly calculated pursuant to the First Step Act's amendment is not

12  "constitutionally ripe or "definite and concrete.")  As discussed in more detail below, the

13  undersigned also agrees that Ms. Turner's petition should be denied on the merits because

14  Subsection 102(b)(1) has not yet taken effect. However, the heart of Ms. Turner's habeas petition

15  is that the good time fix amendment should have taken effect immediately and had the Court

16  agreed with her position, she would have been entitled to release 24 days earlier, on May 19,

17  2019. Thus, the petition is not a "hypothetical or abstract" disagreement for Ms. Turner.

18          Forcing Ms. Turner to wait until the amendment takes effect will moot her claim that she

19  was entitled to be released on May 19, 2019. For these reasons, the undersigned concludes that

20  her petition is not unripe and does not recommend dismissal on that basis.

21  **B.     Exhaustion**

22          The BOP has an established Administrative Remedy Process for inmates wanting to

23  challenge their sentence calculations before proceeding to court. *See* 28 C.F.R. § 542.10 *et seq.*

REPORT AND RECOMMENDATION - 10

The inmate must first seek informal resolution of the issue through the institution's staff. 28 C.F.R. § 542.13. If dissatisfied with the informal response, the inmate must then formally complain to the institution's warden. *Id.*; 28 C.F.R. § 542.14. If the warden denies the inmate a remedy, the inmate may appeal the denial of relief to the Regional Director of the region in which he is confined. 28 C.F.R. § 542.15(a). Finally, if the Regional Director denies relief, the inmate may appeal to the BOP's General Counsel in Washington, D.C. *Id.* Exhaustion of administrative remedies does not occur until the inmate has requested and been denied relief at all levels of the BOP.

The BOP has notified prisoners that the retroactive amendment to the good time credit statute "is not effective immediately." *See*, *Johnston v. Jacquez*, Case No. 19-550-JLR-BAT, Dkt. 9, pp. 6-7; *see also* Dkt. 11-1 therein (BOP Notice to Inmate Population). In its Notice, the BOP cites to the "EFFECTIVE DATE" of Section 102(b)(2), and states:

> We know that inmates and their families are particularly interested in the changes regarding good conduct time. The law will allow BOP *in the future* to apply 54 days of credit for every year a sentence was imposed, which is a change to the prior law.
>
> While this change may result in additional credit for inmates *in the future*, it is not effective immediately not is it applicable to all inmates.

*Id.* (emphasis added).

Exhaustion is excused where 1) the prisoner faces irreparable harm from delay incident to pursuing administrative remedies; 2) there is some doubt whether the agency was empowered to render relief; or 3) the agency has indicated predetermination of the issue, rendering exhaustion futile. *Madigan v. McCarthy*, 503 U.S. 140, 146–49 (1992), *superseded on other grounds*, 42 U.S.C. § 1997(e).

REPORT AND RECOMMENDATION - 11

1    The Court recognizes that the exhaustion requirement is eminently reasonable where the

2  DOJ and BOP are in the process of implementing a new statute and Congress has given the

3  Executive Branch time for this implementation. Requiring exhaustion after the good time fix

4  amendment has been implemented will allow the BOP to develop a factual record and apply its

5  expertise before subjecting claims to challenges in the federal courts. Under the circumstances of

6  this case however, requiring Ms. Turner to exhaust is an exercise in futility when the BOP has

7  taken the position, and notified all of its inmate population, that the retroactive amendment to the

8  good time credit statute "is not effective immediately." At oral argument in the *Johnston* case,

9  the government explained that if Subsection 102(b) is effective immediately, exhaustion would

10  be required, but conceded "there may be little purpose in exhausting the administrative

11  remedies" if the statute is not yet effective. See, Dkt. 9, p. 19 in *Johnston v. Jacquez*, Case No.

12  19-550-JLR-BAT.

13    Because the BOP predetermined the issue and made it clear that any request Ms. Turner

14  makes to the BOP for calculation of good time credits under the amended statute will be denied,

15  there is no available administrative remedy. Under these circumstances, it would be futile for

16  Ms. Turner to exhaust her administrative remedies and the undersigned does not recommend

17  dismissal on this basis.

18  **C.    Equal Protection/Due Process**

19    Ms. Turner contends she is being denied equal protection of the law by the delayed

20  implementation of the good time fix amendment. The First Step Act is clearly retroactive as it

21  states that the good time fix amendment applies equally to all inmates, whether they offended

22  "before, on, or after the date of enactment" of the Act. However, Ms. Turner points out that the

23  new computation does not apply to all inmates because there are many inmates, like herself, who

REPORT AND RECOMMENDATION - 12

1    have release dates between December 21, 2018, and July 19, 2019. Ms. Turner argues that this

2    "arbitrarily-comprised group" will serve more time than other inmates because the BOP

3    continues to apply the calculation method presently in existence until the good time fix

4    amendment becomes effective on July 19, 2019.

5        "[A] classification neither involving fundamental rights nor proceeding along suspect

6    lines is accorded a strong presumption of validity and must be upheld if there is a rational

7    relationship between the disparity of treatment and some legitimate governmental purpose."

8    *Aleman v. Glickman*, 217 F.3d 1191, 1200 (9th Cir. 2000) (citation omitted). The rational basis

9    test sets a low bar. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 903 (9th Cir. 2018). The

10   court "asks whether 'there is any reasonably conceivable state of facts that could provide a

11   rational basis for the classification.'" *Fowler Packing Company, Inc. v. Lanier*, 844 F.3d 809,

12   815 (9th Cir. 2016) (quoting *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993)).

13       Here, the delayed application of the good time fix amendment does not target a "suspect

14   class," which is defined by an immutable characteristic such as race, national origin, and gender.

15   *See Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir. 2001). Being a "prisoner" or "convicted

16   person" also fails to constitute a suspect class for equal protection purposes. *United States v.

17   Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011). Additionally, a prisoner possesses no constitutional

18   right to release before his valid sentence expires. *See Greenholtz v. Inmates of Nebraska Penal

19   and Correctional Complex*, 442 U.S. 1, 7 (1979).

20       Contrary to Ms. Turner's contention,[4] she is not suffering the wrongful deprivation of

21

22   ───────────────
     [4] The cases on which Ms. Turner relies (*see* Dkt. 7 at 10 (citing *Weaver v. Graham*, 450 U.S. 24,
     33–34 (1981) (good time credits protected against ex post facto reductions); *Wolff v. McDonnell*,

23   418 U.S. 539, 557 (1974) (compliance with due process required before depriving prisoners of
     good time credits); *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (BOP
     regulations codify constitutionally-required protection against deprivation of good time credits

REPORT AND RECOMMENDATION - 13

good time credits because the "credit toward service for satisfactory behavior" contained in the good time fix amendment merely authorizes the BOP to offer prisoners the benefit of a reduced sentence in exchange for good behavior based on the new 57-day formula. *See*, *e.g.*, *Perez v. Zenk*, No. 04-CV-5069 (CBA), 2005 WL 990696, at *4 (E.D.N.Y. Apr. 11, 2005) (BOP's policy of calculating good time credits is subject only to rational basis review); *see Molina v. Underwood*, No. 3:19-cv-641-K-BN, 2019 WL 1533444, at *2 (N.D. Tex. Mar. 19, 2019) (summarily dismissing § 2241 petition seeking immediate recalculation of good-time credit under the First Step Act and rejecting equal protection and due process claims).

The delayed implementation of the good time fix amendment will in fact benefit those prisoners whose 47-day release dates fall after July 19, 2019. For example, a prisoner with a release date of July 20, 2019 (under the old 47-day calculation) would have his release date accelerated by one day, whereas a prisoner with a release date of 70 days from July 19, 2019, could be released on the same day as the prisoner with the release date of July 20, 2019. However, the fact that the new good time fix will benefit some groups of inmates and not others, is not a basis for invalidation. In fact, the rational basis standard does not require that Congress choose the best means of advancing its goals or that the means chosen is the best fit. *See*, *Vermouth v. Corrothers*, 827 F.2d 599, 603 (9th Cir.1987); *Mauro v. Arpaio*, 188 F.3d 1054, 1059–60 (9th Cir.1999). *See also*, *United States v. Navarro*, 800 F.3d 1104, 1110-14 (9th Cir. 2015) (rejecting arguments that delayed implementation of Amendments 782 and 788 to the Sentencing Guidelines violated the Due Process and Equal Protection Clauses because delay

---

without due process of law) (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)), emphasize a prisoner's right to due process before earned statutory good time credits can be taken from her by a retroactive law or regulation, or as the result of a disciplinary punishment – here, the additional good time credits do not exist until the amendment is effective.

REPORT AND RECOMMENDATION - 14

1    provided necessary time for court review, accommodated the need to arrange for transition and

2    reentry programs, and allowed affected agencies to prepare for increased workload).

3        The delayed implementation of the good time fix amendment also "bears a rational

4    relation to [the] legitimate end" of allowing "the Executive Branch time for this implementation.

5    It is reasonable to permit that implementation to occur[.]" *See Shah v. Hartman*, No. 1:18-cv-

6    7990, slip op. at *5 (N.D. Ill. Jan. 3, 2019), available at http://www.lisa-legalinfo.com/wp-

7    content/uploads/2019/01/ Order -January-3-2019.pdf. Congress rationally chose to give the BOP

8    a reasonable time to develop and implement through notice-and-comment rulemaking a new

9    approach to awarding credit not only for good conduct, but also for successful completion of

10    recidivism reduction programming under 18 U.S.C. § 3632(d)(4), and to complete the planning

11    necessary to assist individuals with the reentry process.

12        Accordingly, the Court concludes that Ms. Turner's claim that the delayed

13    implementation violates her Due Process and Equal Protection rights should be denied.

14    **D.    Statutory Construction of First Step Act**

15        "'In the absence of an express provision in the statute itself, an act takes effect on the date

16    of its enactment.'" *United States v. Shaffer*, 789 F.2d 682, 686 (9th Cir. 1986) (quoting *United*

17    *States v. Clizer*, 464 F.2d 121, 123 n.2 (9th Cir. 1972)). "'The preeminent canon of statutory

18    interpretation requires [the court] to presume that [the] legislature says in a statute what it means

19    and means in a statute what it says there. Thus, [the court's] inquiry begins with the statutory

20    text, and ends there as well if the text is unambiguous.'" *Satterfield v. Simon & Schuster, Inc.*,

21    569 F.3d 946, 951 (9th Cir. 2009) (quoting *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th

22    Cir. 2008)).

23

REPORT AND RECOMMENDATION - 15

1   As previously noted, the good time fix amendment is one of three subsections contained

2   in Subsection 102(b). Subsection 102(b)(2), the "Effective Date" subsection, provides that "[t]he

3   amendments made by this subsection shall take effect beginning on the date that the Attorney

4   General completes and releases the risk and needs assessment system under subchapter D of

5   chapter 229 of title 18, United States Code, as added by section 101(a) of this Act." This

6   language is unambiguous. Subsection 102(b)(2) plainly states that the amendments contained in

7   Section 102(b) (which includes the good time fix amendment), do not take effect until the

8   Attorney General releases the risk and needs assessment system, which is due on July 19, 2019.

9   Courts confronted with this same question have concluded that this effective date provision does

10  in fact, apply to the good time fix amendment. *See United States v. Murgia*, No. 3:10-cr-0076-

11  01-HRH, 2019 WL 2236067 (D. Alaska May 22, 2019) (citing *United States v. Richards*, Case

12  No. 3:05-cr-00185, 2019 WL 2008572, at *4 (M.D. Tenn. May 7, 2019) ("[a]lthough Richards

13  argues that the effective-date provision does not apply to the good-time fix, virtually every court

14  in the country confronted with the question has concluded that it does and that, as a result,

15  motions seeking relief under the [First Step Act] now are premature"); *United States v. Sirois*,

16  Case No. 1:11-cr-00206-JAW-2, 2019 WL 1923632, at *2 (D. Me. April 30, 2019) (citation

17  omitted) ("the good time credit provisions of the First Step Act are not yet effective" because

18  "Section 102(b)(2) of the Act specifically provides that the amendments made in subsection

19  102(b) of the Act take effect only when the Attorney General completes the 'risk and needs

20  assessment system' required by Section 101(a) of the Act"); *Crittendon v. White*, Case No. 1:19-

21  cv-669, 2019 WL 1896501, at *1 (M.D. Pa. April 29, 2019) (good time credit amendment does

22  "not take effect until the Attorney General completes the 'risk and needs assessment system'");

23  *United States v. Yates,* Case No. 15-40063-01-DDC, 2019 WL 1779773, at *3 (D. Kan. April 23,

2019) ("[c]ourts have concluded that the plain language of § 102 of the First Step Act mandates the change to good-time credit calculations after the Attorney General releases the risk and needs assessment system mandated by the Act"); *Matthews v. Williams*, 4:19CV518, 2019 WL 1639776, at *2 (N.D. Ohio, April 16, 2019) (citation omitted) ("[t]he First Step Act is explicit about the effective date of the new good-time provisions[,]" which is on the date that "the Attorney General completes and releases the risk and needs assessment system"); *United States v. Scouten*, Case No. 13-CR-20S, 2019 WL 1596881, at *1 (W.D.N.Y. April 15, 2019) (citation omitted) ("[b]y the plain terms of the Act, the provision is not effective until the Attorney General completes the risk and needs assessment system"); *Johnson v. Bureau of Prisons*, Case No. 4:19-cv-224-O, 2019 WL 1569360, at *1 (N.D. Tex. April 11, 2019) ("the good-time-credit change will not take effect until the attorney general completes the 'risk and needs assessment system' required to be completed within 210 days after the December 21, 2018 enactment, as provided by §§ 101(a) and 102(b)(2) of the [First Step Act] 2018"); *United States v. Parrett*, Case No. 01-CR-168-JPS, 2019 WL 1574815, at *1 (E.D. Wis. April 11, 2019) ("the Act's good-time provisions have not yet taken effect; before they do, the Attorney General must complete the 'risk and needs assessment system'"); *United States v. Powell*, Case No. 5:11-cr-75-JMH-1, 2019 WL 1521972, at *3 (E.D. Ky. April 8, 2019) (provision amending good time credit statute "has not yet taken effect"); *Roy v. United States Bureau of Prisons*, Case No. 2:19-CV-59-RMP, 2019 WL 1441622, at *1 (E.D. Wash. April 1, 2019) ("[t]he good-time provisions of the First Step Act ... did not become effective when the Act took effect on December 21, 2018")). *See also*, *United States v. Landry*, No. 3:18-cr-5002-RBL, slip op. at *1 (W.D. Wash. Apr. 18, 2019) (denial of petition and motion for reconsideration based on the statute's plain language in delaying the amendment).

REPORT AND RECOMMENDATION - 17

1    As other petitioners before her have argued, Ms. Turner contends it makes little sense to

2    delay implementation of the good-time fix amendment because the BOP could begin calculating

3    good time credit pursuant to the amendment immediately. While this may be technically correct,

4    the Court must assume that Congress said what it meant and meant what it said. Here, Congress

5    specifically stated that the Section 102(b) amendments would not take effect until the Attorney

6    General completes the risk and needs assessment system, which he has until July 19, 2019 to

7    complete. There is nothing in the statute, in the Constitution, or in the Congressional record to

8    the contrary.

9    Ms. Turner also urges the Court to consider the totality of the circumstances to construe

10   that the good time fix amendment is immediately effective because Congress clearly intended to

11   rectify the earlier mistake resulting in the BOP's erroneous good time credit calculation. Ms.

12   Turner analogizes the circumstances here to those in *Gozlon-Peretz*, where the delayed effective

13   date of the supervised release provisions of the Sentencing Reform Act gave way to the

14   congressional intention to fill a gap in the sentencing scheme. *See Gozlon-Peretz v. United*

15   *States*, 498 U.S. 395, 405 (1991) ("Given the apparent purpose of the legislation to rectify an

16   earlier mistake, it seems unlikely that Congress intended the effective date to be any time other

17   than the date of enactment."). Ms. Turner urges the Court to correct the "drafting inadvertence"

18   of Congress that deprives well-behaved prisoners of full good time credits under § 3624(b). The

19   Court cannot do so.

20   The plain language of the good time fix amendment makes clear that Congress intended

21   to reject the BOP's prior implementation of good conduct credit based on actual time served and

22   to adopt the contrary position that good conduct credit is earned based on the imposed sentence

23   length. There is no question that Congress is instructing that federal prisoners are eligible to earn

REPORT AND RECOMMENDATION - 18

1    a full 54 days of good conduct credit per year, not the 47 days that resulted under the BOP's

2    policy. However, there is nothing in the record, in the statute itself, or in the Congressional

3    record to indicate that Congress intended the effective date to be other than what is specifically

4    stated in Subsection 102(b)(2). If Congress had wanted Subsection 102(b) to be effective on the

5    date of enactment, it could have made it so by simply not placing the good time fix amendment

6    within Section 102, by specifically stating that it was to be immediately effective, or by not

7    stating any effective date (as it did elsewhere within the Act) so that by default, the subsection

8    would be effective on the date of enactment. *See*, *e.g.*, *Gozlon-Peretz*, 498 U.S. at 404 ("[W]here

9    Congress includes particular language in one section of a statute but omits it in another section of

10   the same Act, it is generally presumed that Congress acts intentionally and purposely in the

11   disparate inclusion or exclusion.") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

12        Congress' intent regarding the effective date of the good time fix amendment is

13   highlighted by the manner in which it treated other amendments of the First Step Act. Congress

14   for instance, implemented a different effective date for Section 603, which amended 18 U.S.C. §

15   3582. That amendment addresses "compassionate" early release, and unlike the new good time

16   fix amendment, the new compassionate early release amendment contained no delay in

17   application language and thus, became effective on December 21, 2018.

18        Ms. Turner also contends that she faces imminent and irreparable harm in the form of

19   serving more time than her sentence requires. This argument raises a theoretical concern that

20   does not appear to track with Ms. Turner's situation. The government has not argued that under

21   the First Step Act Ms. Turner can or will be held until July 19, 2019. Additionally, Ms. Turner

22   has not presented anything showing that the BOP plans on altering her current release date of

23   June 12, 2019.

REPORT AND RECOMMENDATION - 19

1

2       The Court is not unsympathetic to Ms. Turner's argument that she would be entitled to an

3   additional 24 days' good time credit and would have been released on May 19, 2019. However,

4   the Court cannot rewrite the amendment to require immediate implementation when Congress

5   declined to do so. To uphold Ms. Turner's position, the Court would have to ignore the plain

6   language of Subsection 102(b)(2), which provides that the amendments made in subsection

7   102(b) of the Act take effect only when the Attorney General completes the "risk and needs

8   assessment system" required by Section 101(a) of the Act. This Court has no power to rewrite or

9   disregard the statute in order to accommodate Ms. Turner's situation. There is no doubt that

10  Congress can postpone the date on which a law, or part of a law, is to become effective. *See*

11  *Gozlon-Peretz*, 498 U.S. at 405-08. And where Congress has provided an express effective date

12  for a statutory provision, that date controls. *Id*. at 403-404.

13      Section 102(b)(2) is clear that it covers implementation of the good time fix amendment

14  because it applies to the implementation of *all* of Section 102(b). In addition, and contrary to Ms.

15  Turner's position, the risk and needs assessment system does involve sentence calculation to the

16  extent that the system must "determine when a prisoner is ready to transfer into prerelease

17  custody or supervised release in accordance with § 3624." First Step Act of 12018, Pub. L. No.

18  115-015, 132 Stat. 015 § 101(a) (2018).

19      Accordingly, the undersigned recommends that Ms. Turner's habeas petition seeking

20  recalculation of her good time credits under the First Step Act be **denied**.

21                          **OBJECTIONS AND APPEAL**

22      This Report and Recommendation is not an appealable order.  Therefore a notice of

23  appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

REPORT AND RECOMMENDATION - 20

assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **June 25, 2019.** The Clerk should note the matter for **June 27, 2019**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed seven (7) pages.  The failure to timely object may affect the right to appeal.

DATED this 6th day of June, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 21